[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CLARIFICATION OF JUDGMENT
The plaintiffs, by their counsel, filed a motion for clarification dated May 29, 1996, asking the court to "clarify" a portion of paragraph 2 contained in a certain judgment dated June 14, 1995, concerning the matter in caption.
The judgment was prepared by counsel after a hearing conducted before the court on June 14, 1995, and based on the notes made by the court on that date and in accordance with the agreement between counsel for the respective parties, the court approved and accepted the judgment file.
A dispute has arisen between the parties as to the interpretation of a portion of paragraph 2 of the judgment concerning the Pfizer stock.
Paragraph 2 in its entirety is set forth herein.
 2. The obligations of the Defendants Gaspare P. Savona, Jr. and Lynn C. Savona, pursuant to paragraph 1, above, are contingent upon the receipt by the Defendants, Gaspare P. Savona, Sr. and CT Page 5882 Carmela Savona of (1) shares of common stock in Pfizer, Inc., transferred into the name of Carmella Savona and whose fair market value at the close of the New York Stock Exchange on the date of this Judgment shall be thirty thousand dollars ($30,000) and (2) a general release from the Defendant Lynn C. Gilman and from the Plaintiffs Albert T. Gilman and Janice K. Gilman to Gaspare P. Savona, Jr., Gaspare P. Savona, Sr. and Carmella Savona.
The dispute over the interpretation of paragraph 2 in part arose due to the fact that on June 1, 1995, Pfizer common stock split two for one. Issue date of the new shares was July 1, 1995.
The closing price of Pfizer common stock on June 14, 1995 was $89 per share.
The price for the when issued shares on June 14, 1995 was $44.50.
Counsel may not have been aware of the split at the time of their appearance before the court or at the time counsel prepared the judgment file.
Originally, the plaintiffs had desired $30,000 cash, but that was not an available option, and paragraph 2 was implemented.
The record ownership date to be entitled to the stock split was apparently June 14, 1995, or a date prior thereto.
There were other provisions in the judgment, particularly the lease of the Blue Whale Package Store, which caused inordinate delay in the implementation of the entire judgment.
The plaintiffs on June 14, 1995, under the terms of the judgment were entitled to shares of common stock of Pfizer worth $30,000.
The stock on June 14, 1995, closed at $89 per share, therefore, the plaintiffs were entitled to 337 shares at the $89 CT Page 5883 figure.
Inasmuch as there was a long delay in implementing the judgment, no shares were transferred to the plaintiffs until February 21, 1996, when 337 shares of the common stock of Pfizer were set over.
These shares, however, were post split shares and do not fairly represent what the plaintiffs were-entitled to.
The determining date and the sum certain are June 14, 1995, and $30,000.
If the 337 shares had been promptly set over so that the plaintiffs were the record owner on the effective date for eligibility for the new when issued shares, plaintiffs would have received the new split shares.
There was no provision in the judgment file prepared by counsel to account for stock splits or the vagaries of the stock market fluctuation.
For the plaintiffs to end up with only 337 shares of Pfizer's post split shares would not be fair or equitable.
This would mean that the plaintiffs would end up with an asset worth considerably less than the $30,000 to which they were entitled.
The plaintiffs therefore appear to be entitled to an additional 337 shares of Pfizer common stock in that the $30,000 on June 14, 1995, would have purchased 337 of the pre-split shares at a value of $89 per share or 674 shares of the when issued split shares at $44.50.
Austin, J.